UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

UNITED STATES OF AMERICA

-v-

DAVID ADAMS,

Defendant.

―――――――――――――――――――――――――――

No. 10-cr-82 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Defendant David Adams moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that the Court modify his sentence to time served and immediately release him to home confinement and a period of supervised release in light of the COVID-19 pandemic. (Doc. No. 189.)[1] The government opposes Adams's motion. (Doc. No. 191.) For the reasons stated below, Adams's motion is DENIED.

## I. BACKGROUND

In 2009, Adams was arrested and charged with being one of the leaders of a nationwide marijuana trafficking organization. (*See* Presentence Investigation Report ("PSR") ¶¶ 12, 13, 16; Doc. No. 144 at 12.) On December 15, 2010, Adams pleaded guilty pursuant to a plea agreement with the government to one count of conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (2d Cir. No. 13-146, App'x at 59–69.) As part of the plea agreement, the parties stipulated to a Sentencing Guidelines range of 210 to 262 months' imprisonment. (*Id.* at 55.) On December 7, 2012, Judge Thomas P. Griesa sentenced Adams to a term of imprisonment of 210 months,

―――――――――――――――――
[1] Unless otherwise indicated, all docket citations are to 10-cr-82 (RJS).

which Judge Griesa concluded was warranted "because of the seriousness of the crime, because of instances of obstruction of justice, and the overall seriousness of the case." (Doc. No. 144 at 13.)  In doing so, Judge Griesa acknowledged Adams's "serious health problems, including a heart condition," but noted that the Bureau of Prisons ("BOP") "has facilities to care for all kinds of medical problems." (*Id.* at 13–14.)

Adams appealed, arguing that his medical condition and prescribed medications prevented him from entering a knowing guilty plea, and that his 210-month term of imprisonment was per se unreasonable and violated the Eighth Amendment's prohibition against cruel and unusual punishment because, given the severity of his heart condition, it represented a de facto death sentence.  The Second Circuit rejected both arguments and affirmed the judgement of the district court. *See United States v. Adams*, 768 F.3d 219 (2d Cir. 2014).  With respect to the adequacy of Adams's guilty plea, the Second Circuit found that although Judge Griesa arguably should have asked Adams about his heart condition and medication at the plea hearing, Adams nevertheless failed to establish "a reasonable probability that, but for the error, he would not have entered the plea," since it was only after he did not receive a below-Guidelines sentence that he "assert[ed], for the first time [on] appeal, that his medications and heart condition may have adversely affected his ability to enter a knowing, intelligent, and voluntary plea." *Id.* at 224.  As to Adams's sentencing challenge, the Circuit concluded that the 210-month sentence was not unreasonable, and noted that "[l]engthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *Id.* at 225 (*quoting United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003)).

In 2016, Adams's mother, Rosemary Adams, attempted to file a habeas petition on her

son's behalf, arguing that Adams was "incarcerated with [a] life threatening illness" that rendered him incapable of pursuing the motion on his own. (Doc. No. 166.) Judge Griesa ultimately dismissed the petition, concluding that Rosemary Adams did not have standing to bring the petition on Adams's behalf because she had failed to demonstrate that "Adams's heart condition, from which he suffered at the time of his crime, his plea hearing, and his sentencing prevents him from litigating his claim." (Doc. No. 176 at 5.) Judge Griesa also noted that Ms. Adams could not proceed pro se on her son's behalf in light of the "long recognized rule that an individual may not be represented in court by another person who is not an attorney." (*Id.* at 6.)

Following Judge's Griesa's passing in December 2017, this matter was reassigned to my docket. (Doc. No. 177.) In late 2018, Adams filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) following a retroactive amendment to the United States Sentencing Guidelines. (Doc. No. 181.) In urging the Court to reduce his sentence to the bottom of the reduced Guidelines range, Adams once again made reference to his heart condition while also noting that, "despite his medical limitations, he has enrolled in numerous educational and vocational training courses," including "college-level courses[] offered by Adams State College and Ashworth College." (Doc. No. 181 at 2.) The government opposed the motion in light of Adams's "history of orchestrating violent acts and engaging in obstructive conduct." (Doc. No. 184 at 1.) On January 9, 2018, the Court granted Adams's motion and reduced Adams's sentence to 168 months' imprisonment – the low end of the revised Sentencing Guidelines range. (Doc. No. 186.) Adams is currently housed in FCI Terminal Island in California, and has a projected release date of March 10, 2021. (Doc. No. 189 at 2.)

On April 8, 2020, Adams applied for compassionate release with the BOP. The BOP did not respond for over 30 days, and having thus exhausted his administrative remedies, *see United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 1876300 (S.D.N.Y. Apr. 14, 2020), Adams

3

moved for compassionate release on May 20, 2020, requesting that the Court modify his sentence to time served and immediately release him to home confinement and a period of supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No. 189.)  On May 15, 2020, the government submitted a letter opposing Adams's motion (Doc. No. 191), and on May 20, 2020, Adams submitted a reply to the government's opposition (Doc. No. 194).  Based on those submissions, the Court concluded that Adams (1) suffers from a serious underlying heart condition that the CDC has recognized could put him at greater risk for complications due to COVID-19; (2) received a positive COVID-19 test on April 27, 2020; and (3) has not exhibited any symptoms since that date.  (Doc. No. 195.)  In light of those facts, the Court ordered the parties to make additional submissions to the Court regarding:

> (1) whether Defendant has manifested any symptoms of the virus since his positive COVID-19 test on April 27, including since Defendant last updated the Court on May 20; (2) whether Defendant is susceptible to continued harms from the virus more than 30 days after his positive diagnosis; (3) whether persons who have tested positive for COVID-19 are likely to become re-infected at a later date; (4) whether Defendant is more likely to infect third parties at FCI Terminal Island or if released and transported to his parents' residence; and (5) the likelihood that Defendant's positive COVID-19 test on April 27 was a false positive.

(*Id*.)  The parties each responded to the Court's Order.  (*See* Doc. Nos. 196, 197.)  Because both parties agreed that a cardiology consultation would be beneficial in understanding the impact of COVID-19 on Adams's heart, and because the Court was unlikely to grant the extraordinary remedy of compassionate release without additional information on this subject, the Court ordered the BOP to arrange for Adams to be examined by a cardiologist by July 1, 2020.  (Doc. No. 198.)

Adams was examined by a cardiologist on June 29, 2020 (*see* Doc. No. 204), and the Court is now in receipt of the cardiologist report, filed under seal, and additional submissions from the parties regarding the impact of this report on Adams's motion for compassionate

release, unredacted versions of which were also filed under seal. (Doc. Nos. 206, 207.)

## II. APPLICABLE LAW

"[A] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (quoting *United States v. Gotti*, No. 02-cr-743 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020)). Section 3582(c)(1)(A) provides one such exception, often referred to as "compassionate release." 18 U.S.C. § 3582(c)(1)(A). Through that provision, a court may "reduce" a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction," and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission." *Id.* In relevant part, the Guidelines provide that "extraordinary and compelling" reasons include, the "[m]edical [c]onditon of the [d]efendant" if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 App. n.1(A).

## III. DISCUSSION

Adams maintains that the COVID-19 pandemic, together with his heightened risk for complications from COVID-19 due to his underlying heart condition, merits a compassionate release. (Doc. No. 189 at 2.) The Court disagrees.

While it is undisputed that Adams has severe underlying health issues that would otherwise increase his risk of complications from COVID-19, the fact remains that he has already contracted, and seemingly recovered from, COVID-19. Once a defendant has contracted COVID-19, a motion for compassionate release is no longer "about the adequacy of preventive measures to ensure that a defendant does not contract the virus or the potential risk to him or her

– particularly due to one or more underlying health conditions – if he or she were to do so." *United States v. Zubkov*, No. 14-cr-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020); *accord United States v. Davis*, No. 12-cr-712 (SHS), 2020 WL 3790562, at *2 (S.D.N.Y. July 7, 2020); *see also United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying relief in light of the defendant's positive COVID-19 test because "releasing [the defendant] from the MCC will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19"). Instead, the Court focuses on the impact of COVID-19 on Adams and his ability to "provide self-care" within the correctional facility in light of his diagnosis. *See* U.S.S.G. § 1B1.13 App. n.1(A).

Given Adam's apparent recovery and the minimal impact that COVID-19 appears to have had on him during his incarceration, the Court concludes that Adams has not established that his COVID-19 diagnosis, combined with his underlying health defects, will "substantially diminish[] [his] ability . . . to provide self-care." *Id.* And while Adams contends that he might still suffer undetected adverse effects from COVID-19 in the future, the Court finds that this possibility is simply too speculative to warrant release. *See United States v. Binday*, No. 12-cr-152 (CM), 2020 WL 4017822, at *6 (S.D.N.Y. July 16, 2020) (denying compassionate release to a defendant who "appear[ed] . . . to have an asymptomatic case of COVID-19"); *United States v. Davis*, No. 12-cr-712 (SHS), 2020 WL 3790562, at *2–3 & n.2 (S.D.N.Y. July 7, 2020) (finding that defendant had not shown "extraordinary or compelling" reasons for release because he had developed only mild symptoms of COVID-19 and had recovered); *United States v. Decker*, No. 17-cr-738 (LAK), 2020 WL 3268706, at *1–2 (S.D.N.Y. June 17, 2020) (denying release because, "while defendant was infected with COVID-19, the record does not suggest that he suffered any complications from hypertension"). Moreover, Adams's health records demonstrate that while he has suffered from underlying health problems for many years, those conditions

appear to be stable and have not prevented him from caring for himself.

The Court further finds that Adams has not shown that FCI Terminal Island is unable to provide him adequate care. According to the government, BOP personnel conducted daily symptom and temperature checks on Adams, and had a plan to remove him to isolation in the event that he developed symptoms so that he might be more closely monitored. (Doc. No. 191 at 6.) And while Adams makes much of the fact that the BOP had initially expressed concern that it would be unable to conduct a cardiologist examination by the Court's July 1, 2020 deadline, it was ultimately able to do so, and promptly provided those results to counsel. (*See* Doc. Nos. 202, 203.)

Finally, although the Court recognizes that at least some courts have released defendants on the basis that they could contract COVID-19 again (*see* Doc. No. 207 at 4–5), the Court finds that this possibility is also far too speculative a basis to release Adams in this case. *See United States v. Davis*, No. 12-cr-712 (SHS), 2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020) ("Although the Court understands [defendant's] concerns of reinfection, it cannot conclude that this risk is an extraordinary and compelling reason for a significant sentence reduction."); *United States v. Decker*, No. 17-cr-0738 (LAK), 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) ("However remote or probable, the possibility of reinfection is speculative, as no definitive medical conclusions have been reached on prior infection with COVID-19 results in immunity from future infection (as is the case with some but not all viral infections) and, if so, the duration of any such immunity.").

Because the Court denies Adams's motion on the basis that he has not shown "extraordinary" or "compelling" reasons warranting compassionate release, the Court declines to address whether the § 3553 factors weigh in favor of Adams's release.

\*\*\*

Of course, the Court's denial of Adams's motion does not mean that Adams is completely without options. There exist two potential remedies that can offer him the type of relief that he is seeking. The first is a furlough under 18 U.S.C. § 3622, which would permit Adams to be released "until the threat posed by COVID-19 subsides and [he] c[an] be safely returned to prison to finish h[is] sentence." *Roberts*, 2020 WL 1700032, at *3. The second is the authority that the CARES Act and the Attorney General have given to the BOP to permit prisoners to finish the remainder of their sentences in home confinement. See 18 U.S.C. § 3624(c)(2). Significantly, both of these remedies are exclusively within the discretion of the BOP; the Court lacks authority to order either one. Nevertheless, the Court trusts that the BOP will act with appropriate sensitivity to inmates, like Adams, who suffer from high-risk comorbidities and who have already served the bulk of their sentences.

## IV. Conclusion

For the reasons set forth above, Adams's motion is DENIED. The Clerk of the Court is respectfully directed to terminate the motions pending at document numbers 189, 194, 196, and 207.

SO ORDERED.

Dated:     August 4, 2020
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation